**DBI SERVICES, INC.,**
**Plaintiff–Appellant,**

v.

**AMERADA HESS CORPORATION, and**
**Bonner Lease Service, Etc.,**
**Defendants–Appellees.**

**No. 89–1067.**

United States Court of Appeals,
Fifth Circuit.

Aug. 1, 1990.

Rehearing Denied Aug. 28, 1990.

John A. Flygare, Charles E. Galey, Jones, Flygare, Galey, Moody & Brown, Ralph H. Brock, Lubbock, Tex., for plaintiff-appellant.

Allan Van Fleet, Carlos Garcia, Vinson & Elkins, Houston, Tex., Frank E. Murchison, III, McCleskey, Harriger, Brazill & Graf, Lubbock, Tex., for Amerada Hess Corp.

Bob Hanna, Hanna, Bentley & Hanna, Jack Bryant, James D. Norvell, Abilene, Tex., for Bonner Lease Service.

Before THORNBERRY, GARWOOD and DUHÉ, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant DBI Services, Inc. (DBI) appeals the district court's judgment n.o.v. for the defendant-appellee Amerada Hess Corp. (Amerada Hess) on DBI's Tex-as common law claim for tortious interference with contract. We affirm.

### Facts and Proceedings Below

DBI provides oil field trucking services, brine water, and drilling mud to oil producers in the area immediately surrounding Seminole in Gaines County, Texas. Amerada Hess is the major oil producer in this area, and regularly contracted with DBI for its services from 1983 to 1986. During an audit of its contractors in the Seminole area in the fall of 1986, however, Amerada Hess learned that DBI had engaged in lavish entertainment of certain local Amerada Hess employees with responsibility for awarding work to vendors on Amerada Hess's wells. Disturbed by this discovery, Amerada Hess decided to cease dealings with DBI as of December 17, 1986. DBI's claims in this case are based on three incidents that arose as a result of this suspension.

In January 1987, Seminole Sales and Leasing (Seminole) was the low bidder on a contract to provide general trucking services to Amerada Hess for the ensuing six months. Seminole lacked enough trucks to perform all the anticipated work, and therefore proposed to use DBI and another company with which Amerada Hess was unfamiliar as backup. Because of DBI's suspension, and because Amerada Hess did not want to depend on a trucking company with which it was unfamiliar, it declined to allow Seminole to subcontract the backup work. Instead, Amerada Hess awarded Seminole all the work it could handle itself, and then awarded the remainder of the trucking work to the next lowest bidder.

The next incident involved Permian Brine Sales, Inc. (Permian), which agreed with DBI to bid for Amerada Hess's 1987 brine water contract. Permian, which had no brine water station in Seminole, agreed with DBI to supply DBI's brine water to Amerada Hess and simply charge DBI a ten percent fee for billing and other administrative matters. Permian was low bidder for the Amerada Hess brine water contract, but Amerada Hess refused to award it to Permian because the brine water Per-

mian planned to supply came from DBI. Instead, Amerada Hess hired the next lowest bidder.

The final incident also involved an indirect brine water contract. In the fall of 1987, Amerada Hess hired Baber Well Service (Baber) to plug one of its wells in the Seminole area (this contract is not in evidence). Baber in turn subcontracted with DBI to provide fresh and brine water for the job. When *DBI's* loaded trucks arrived at the Amerada Hess wellsite, however, representatives from Amerada Hess refused to allow them to unload their water. Amerada Hess instructed Baber that it was not to use DBI's water on Amerada Hess's wells.

DBI filed suit in federal court alleging federal antitrust law violations and pendant state law claims for tortious interference with contract. The jury rendered a verdict against DBI on the antitrust violations, but for DBI on the pendant state law claims, and awarded actual and punitive damages in the amount of $183,450. The district court initially entered judgment on this verdict, but ultimately granted Amerada Hess's motion for judgment n.o.v. on the state law claims, holding that Amerada Hess's interference with DBI's contracts was privileged as a matter of Texas law. In this appeal, DBI challenges the district court's judgment only with respect to the state law claims.

## Discussion

 Justification is an affirmative defense to a claim for tortious interference with contract under Texas law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). Under this defense, a party is privileged to interfere with another's contract if (1) it is done in a bona fide exercise of his own rights, or (2) he has an equal or superior right in the subject matter to that of the other party. *Id.* at 691. In the case at bar, Amerada Hess apparently concedes DBI's prima facie case on the interference claim, but contends it had a right under the common law to decide with whom it would deal. This right, Amerada Hess argues, privileged its conduct. The district court agreed, and granted judgment n.o.v. on that basis.[1]

DBI does not deny that as a matter of general common law, Amerada Hess had the right to refuse to do business with DBI for any reason or no reason at all. *See Fulton v. Hecht*, 580 F.2d 1243, 1250 (5th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979); *Boyles v. Thompson*, 585 S.W.2d 821, 831 (Tex.Civ. App.—Fort Worth 1979, no writ). Nonetheless, DBI denies that this right gave Amerada Hess license to interfere with its contracts with Seminole, Permian, and Baber.

To support this position, DBI relies primarily on the recent Texas Supreme Court decision in *Sterner v. Marathon Oil, supra.* The plaintiff in that case while employed by a third party was injured in the course of his work on Marathon's premises in 1975. He sued Marathon to recover for his injuries and won. In 1980, he went to work in Marathon's refinery as an employee of Ford, Bacon & Davis (FB & D), a contractor hired to install a hot oil treating plant for Marathon. On his second day at work, however, Sterner became ill and left early. In the process, he was recognized by one of Marathon's safety personnel, and the next day he was terminated by FB & D from his employment with that firm "per Marathon's directive" despite a clause in Marathon's contract with FB & D which gave FB & D the sole right to supervise

---

**1.** At the threshold, DBI argues that Amerada Hess failed to lay a proper predicate under Fed.R.Civ.P. 50(b) for the judgment n.o.v. by failing to claim privilege as a matter of law in its motion for a directed verdict. This argument is meritless. The motion for directed verdict alleged "the evidence conclusively establishes that the conduct in question of Amerada Hess was privileged and justified." While the motion for judgment n.o.v. may have been more specific, it certainly created no surprise. That this was Amerada Hess's defense had been clear all along. *See, e.g., Dimmit Agri Indus. v. CPC Int'l, Inc.*, 679 F.2d 516, 521 (5th Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983).

and manage their project. *See Sterner,* 767 S.W.2d at 688. On these facts, the Texas Supreme Court held that Marathon's contract with FB & D created some evidence[2] that Marathon had relinquished its right to determine who would be employed on the project, and the court reversed judgment n.o.v. in favor of Marathon.

In contrast to *Sterner,* however, there is no evidence in the present case that Amerada Hess ever relinquished its right to determine with whom it would do business. *A fortiori,* the record lacks substantial evidence to sustain a jury finding to that effect. There is nothing from which the jury could conclude either that Amerada Hess ever obligated itself to accept the low bid on a proposal regardless of who was going to be furnishing the supplies or services thereunder or that Amerada Hess ever gave its bidders or contractors the exclusive right to allocate work to subcontractors—to the contrary, the record suggests that as a general rule Amerada Hess explicitly reserved the right to disapprove subcontractors in a standard provision contained on the back of its preprinted bid form.[3]

Moreover, the *Sterner* court found some evidence in that case that Marathon had demanded FB & D actually dismiss Sterner, rather than simply demanding that he not be allowed to work in Marathon's refinery. *Id.* at 691. That demand, the court found, went beyond Marathon's right to control its premises. *Id.* In the case at bar, in contrast, the undisputed facts indicate that Amerada Hess refused only to allow DBI to provide water or services on Amerada Hess projects. It never demanded that contractors refrain from dealing with DBI in other matters, and several Amerada Hess contractors did in fact have unrelated business dealings with DBI. All of this demonstrates that Amerada Hess's refusal to allow DBI to provide it with services and water indirectly through third parties was a legitimate exercise of its common law right to choose with whom to deal, rather than an improper interference with DBI's contracts. *See Boyles v. Thompson,* 585 S.W.2d at 831 (quoting *Restatement (Second) of Torts* § 766 (1979)).

Ultimately, DBI's position would eviscerate Amerada Hess's right to refuse to accept the furnishing of services and supplies from a contractor whose business practices it finds distasteful. The contracts with which Amerada Hess is alleged to have interfered were, as a practical matter, nothing more than third party conduits through which DBI proposed to furnish supplies and services to Amerada Hess. Amerada Hess is not shown to have surrendered its right either to refuse to contract for the furnishing of services and supplies with parties who would perform those contracts through DBI, with whom Amerada Hess did not wish to deal, or to refuse to allow its contractors to furnish through DBI the services and supplies the contractors had agreed to furnish Amerada Hess. Amerada Hess had made it amply clear that it did not wish to be served by DBI. We hold that, as a matter of Texas law, Amerada Hess was privileged to make and enforce this choice.

### Conclusion

For the foregoing reasons, we affirm the

---

**2.** In reviewing a trial court's decision to grant judgment n.o.v., Texas appellate courts apply a strict "no evidence" standard, affirming only if there is no evidence in the record to support the verdict. *See Sterner,* 767 S.W.2d at 690. In contrast, a somewhat broader "substantial evidence" review applies in federal court, even on state law claims. *E.g., Boeing Co. v. Shipman,* 411 F.2d 365, 368–70 (5th Cir.1969).

**3.** However, allegedly due to a photocopying error by reason of which the back of the Seminole and Permian bid forms were not copied and because the Baber documentation is not in the record, the record does not establish that such provisions were (or were not) a part of the Seminole or Permian bids or the Baber contract. Nevertheless, as noted, the evidence does not show that the bid proposals required Amerada Hess to accept the low bid, regardless of who was actually going to furnish the service or supplies; nor is there evidence that the Baber contract gave Baber the right to have it performed by DBI.

judgment n.o.v. rendered by the district court.[4]

AFFIRMED.

---

**4.** DBI also contends that the district court erred in granting judgment n.o.v. denying punitive damages and that it abused its discretion by conditionally granting a new trial on the state law claim. Our decision to affirm the district court's judgment n.o.v. on the liability issue renders both of these contentions moot.