# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2661
_____

Jerry Janvrin, doing business as J&J Trucking

*Plaintiff - Appellee*

v.

Continental Resources, Inc., an Oklahoma corporation

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: June 13, 2018
Filed: August 20, 2019

_____

Before WOLLMAN, ARNOLD, and KELLY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury determined that Continental Resources, Inc. (Continental), had tortiously interfered with the business relationship between Jerry Janvrin and CTAP, LLC (CTAP). Continental appeals, challenging the sufficiency of evidence at trial,

the amount of damages awarded, and the district court's[1] instruction to the jury regarding improper interference.  We affirm.

## I.

At the time of trial in January 2017, Jerry Janvrin was a hired hand and overseer of unit operations at the Jim Clarkson ranch some seventeen miles north of Buffalo, Harding County, South Dakota, where he also raised sheep.  In years past, he had done aerial depredation work exterminating coyotes and fox under a county-funded, state-sponsored depredation program in addition to his work as a ranch hand. He learned about the oil business from others knowledgeable in the industry and in 2010 organized J&J Trucking to haul materials for oil equipment suppliers on an as-needed basis.  Roughly 96% of J&J's income came from CTAP, an equipment supplier having several supply terminals, including one in Bowman, North Dakota, in the Bakken region, which comprises South Dakota, North Dakota, Montana, and parts of southern Canada.

Janvrin himself did not hold a commercial drivers license, and so as an independent contractor he employed others to drive the trucks for J&J Trucking.  He testified that most of those he hired, some 29 in total, were local ranchers, attesting to their reliability and punctuality in meeting their schedules.  He also acknowledged on cross-examination that he had fired one of his drivers after receiving a complaint about her from CTAP, saying, "I had a mandatory three strikes and you are out, and the third time that happened it was done for," referring to other documented circumstances regarding that driver.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

Continental, a top-10 oil producer in the United States and the largest leaseholder in the Bakken region, was CTAP's largest customer in that region from 2010 to 2014.[2] It accounted for roughly 60% of CTAP's business from the Bowman terminal, which served Continental's "Buffalo District," located in the northwest part of Harding County. Gordon Carlson supervises this district from Continental's field office in Harding County, which is located on South Hills Cave Road, a paved road surrounded by open range where local ranchers graze their animals. Although Janvrin's company hauled almost exclusively out of the Bowman terminal, less than 1% of Janvrin's work for CTAP involved hauling to the Buffalo District.

During a February 2014 blizzard, a Continental pick-up truck driver struck and killed two cows belonging to Janvrin's relatives that were standing on South Hills Cave Road. His relatives told Janvrin about the accident and contacted the local newspaper. Janvrin testified that, concerned that many drivers were going too fast for the rural road conditions and recalling that he had lost several sheep on that road in the past, he also called the local newspaper, which published an article about the cow-truck collision and paraphrased his remarks.

Though Janvrin's comments made no mention of Continental or its drivers, Carlson read the article and thought Janvrin was "biting the hand that feeds him" by "pointing the finger at Continental as the cause of the accident." Carlson testified that because of the "disrespectful" comments and because of previous incidents in which Janvrin allegedly visited Continental's well locations without proper safety equipment, Carlson contacted his superiors to request that Janvrin no longer haul materials to Continental's Buffalo District sites. He spoke with the senior engineer in charge of the Buffalo District, who in turn spoke with Ollis Anderson, Continental's Director of Supply Chain Management, located in Oklahoma City,

---

[2]*About Us*, Continental Resources, http://www.clr.com/about (last visited Mar. 22, 2019).

Oklahoma, purportedly to ask that Continental prohibit Janvrin from delivering to its well locations in the Buffalo District.

Director Anderson called Michael "Stoney" McCarrell, Senior Vice-President of Operations at CTAP's headquarters in Lafayette, Colorado. The two had a long-standing professional relationship and had gone hunting in the past. Shortly after the call, McCarrell spoke to Ron Spidahl, the supervisor responsible for assigning independent drivers to CTAP's deliveries from the Bowman terminal. McCarrell asked if Spidahl would have enough trucks for deliveries if they removed Janvrin from their "lineup" of drivers. After Spidahl affirmed that they would, McCarrell responded, "We are not going to use [Janvrin] anymore. [He is] not going to haul for me." Spidahl asked why, and McCarrell replied, "It doesn't make a difference what happened. When I get a call from the big guy—." Spidahl understood "big guy" to mean Ollis Anderson, and thereafter called Janvrin to inform him that he had been removed from the Bowman terminal lineup. Janvrin testified that he received the call on the evening of February 19, 2014, hours after his published remarks in the local newspaper had been distributed.

Carlson testified that he learned about CTAP's decision to completely remove Janvrin from its lineup approximately one week later. Director Anderson testified that, upon his inquiry in a later phone call, Senior Vice President McCarrell confirmed that Janvrin was no longer hauling from the Bowman terminal. Anderson testified that he had not asked McCarrell to return Janvrin to the lineup. Around that time, a Continental employee told one of Janvrin's truckers—a former Continental employee—that he had overheard Carlson bragging that he had shut down a trucking firm.

Janvrin filed a tortious interference claim in state court, alleging that Continental had induced or otherwise pressured CTAP to end its business relationship with J&J in retaliation for Janvrin's newspaper comment. Continental removed the

-4-

case to federal district court based on diversity jurisdiction. See 28 U.S.C. § 1441(a). The case proceeded to trial, at which the district court instructed the jury that Continental had the right to refuse to do business with Janvrin, but that it could not interfere with Janvrin and CTAP's business relationship. The jury returned a verdict for Janvrin, awarding him $123,669 in compensatory damages and $123,669 in punitive damages. The district court denied Continental's motions for judgment as a matter of law and its motion for a new trial.

## II.

### A.

Continental argues that the district court erred in denying its motions for judgment as a matter of law. It claims that the evidence presented at trial was insufficient to support the jury's verdict that Continental had tortiously interfered with the Janvrin-CTAP business relationship. We review *de novo* the denial of a motion for judgment as a matter of law, and we may affirm on any basis the record supports. HOK Sport, Inc. v. FC Des Moines, L.C., 495 F.3d 927, 934 (8th Cir. 2007). We will set aside a jury verdict only if "the evidence adduced at trial is entirely insufficient to support the verdict." Schooley v. Orkin Extermination, Co., 502 F.3d 759, 764 (8th Cir. 2007). We "consider all evidence in the record without weighing credibility, and resolve conflicts and make all reasonable inferences in favor of the non-moving party." Id. A reasonable inference is one that "may be drawn from the evidence without resort to speculation." Id. (quoting Arabian Agric. Servs. Co. v. Chief Indus., Inc., 309 F.3d 479, 482 (8th Cir. 2002)).

A plaintiff alleging tortious interference with a business relationship under South Dakota law must show (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an

intentional and improper act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship or expectancy was disrupted. See Dykstra v. Page Holding Co., 766 N.W.2d 491, 499 (S.D. 2009); Gruhlke v. Sioux Empire Fed. Credit Union, Inc., 756 N.W.2d 399, 408 (S.D. 2008). Continental argues that Janvrin failed to prove the final three elements.

Continental contends that any interference with the Janvrin-CTAP business relationship was neither intentional nor improper. South Dakota courts follow the Restatement (Second) of Torts (1979), see Gruhlke, 756 N.W.2d at 406, which defines an act of interference as intentional "if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) of Torts § 766B cmt. d. Continental argues that any interference was not intentional because the evidence shows that it asked CTAP to stop using Janvrin to haul to Continental's well sites, and that CTAP thereafter decided of its own volition to remove Janvrin from its trucking lineup to avoid confusion at the Bowman terminal.

We conclude that when viewed most favorably to the jury's verdict, the evidence is sufficient to support a conclusion that Continental acted with intent to interfere in the Janvrin-CTAP business relationship, either by desiring to bring the interference about or knowing that the interference was substantially certain to occur. Anderson testified that he had requested that Janvrin be prohibited from delivering to Continental sites in the Buffalo District. McCarrell testified that Anderson had asked him to stop using Janvrin to deliver to Continental sites from the Bowman terminal. Spidahl testified, however, that McCarrell had instructed him to remove Janvrin from the Bowman lineup entirely because he had received a call from Anderson—the "big guy." A reasonable jury could reject Anderson and McCarrell's conflicting testimony and instead infer from Spidahl's testimony that McCarrell had removed Janvrin at Anderson's request. The jury could have reasonably inferred that

Continental knew CTAP was substantially certain to heed its request, owing both to Anderson and McCarrell's long-standing personal and professional relationship and to Continental's status as CTAP's largest customer in the Bakken region. Evidence that Carlson bragged about shutting down a trucking company supports an inference that Continental desired to interrupt the Janvrin-CTAP business relationship. That Continental and CTAP ignored Janvrin's post-termination inquiries bolsters these inferences: Spidahl told Janvrin that he had no information on the termination; Carlson neither answered nor returned Janvrin's calls; and two other Continental employees lacked information and failed to follow up despite Janvrin's request that they do so. Neither company responded to a letter sent on Janvrin's behalf by an attorney with connections to the Buffalo area. Collectively, this evidence, although not overwhelming, was sufficient to allow the jury to conclude that Continental either desired to bring about interference or knew that such interference was substantially certain to occur.

Continental also disputes the jury's determination that its interference was improper. Whether interference is improper "depends upon a judgment and choice of values in each situation." Restatement (Second) of Torts § 767 cmt. b. A non-exhaustive list of factors to be considered includes (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the societal interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. See Dykstra, 766 N.W.2d at 499-500; see also Restatement (Second) of Torts § 767. In considering the nature of the actor's conduct and the actor's motive, the actor's intent, discussed above, will likely factor into whether its conduct was improper. While the Restatement cautions that intent alone "may not be sufficient to make the interference improper," it also instructs that "it may become very important to ascertain whether the actor was motivated, in whole or in part, by a desire to interfere with the other's contractual relations," as such a

motive "to injure another or to vent one's ill will on him serves no socially useful purpose" and "is almost certain to be held improper." Restatement (Second) of Torts § 767 cmt. d.

We conclude that sufficient evidence existed to permit the jury to find that Continental's interference was improper. Testimony of a tense relationship between Continental and Janvrin's family members that predated the February 2014 cow-truck accident, combined with Janvrin's testimony that he was dropped from CTAP's lineup the same day his comments on the accident were published, supports an inference that Continental's motive was retaliatory. The dearth of documented safety violations and complaints involving Janvrin prior to his termination further bolsters such an inference. The jury could have reasonably concluded that Continental acted to injure another or to vent its ill will; that, prompted by Carlson's pique at what he considered to be Janvrin's ungrateful comments, Continental's management team decided to rid itself of this troublesome trucker, and that its conduct in doing so led to Janvrin's banishment from the Bowman terminal.

Continental argues with some vehemence that it had an absolute right to exclude Janvrin from its property and to refuse to accept his services, and that "there is no liability for procuring a breach of contract where such breach is caused by the exercise of an absolute right." Johnson v. Schmitt, 309 N.W.2d 838, 840 (S.D. 1981) (quoting defendant's proposed jury instruction). Indeed, Continental could have, "deliberately and at [its] pleasure," refused to deal with Janvrin. Restatement (Second) of Torts § 766 cmt. b. But the jury determined that it did more than that, that it either explicitly or implicitly asked CTAP to terminate Janvrin's services altogether. Continental had no absolute right to do that.

It is this fact that distinguishes our case from DBI Services, Inc. v. Amerada Hess Corp., 907 F.2d 506 (5th Cir. 1990), a case on which Continental relies. There, oil producer Amerada Hess had learned that trucking service DBI "had engaged in

lavish entertainment of certain local Amerada Hess employees with responsibility for awarding work to vendors on Amerada Hess's wells." Id. at 507. Amerada Hess subsequently ceased all dealings with DBI and refused to enter into contracts with bidders who utilized DBI's services. The Fifth Circuit determined that it had not improperly interfered with DBI's contracts with third parties because it had merely exercised its common law right to refuse to do business with DBI. Id. at 509. The court explained that it was "undisputed" that "Amerada Hess refused only to allow DBI to provide water or services on Amerada Hess projects" and that "[i]t never demanded that contractors refrain from dealing with DBI in other matters." Id. Here, it was disputed whether Continental asked CTAP stop using Janvrin for delivery to Continental sites, or whether it asked CTAP to refrain from dealing with Janvrin altogether. In concluding that Continental interfered with Janvrin and CTAP's business relationship, the jury determined that the latter occurred.

Continental also contends that Janvrin failed to prove that it was the legal cause of his injuries. Evidence establishing that Janvrin's business relationship with CTAP would have continued but for Continental's conduct is sufficient to prove this element of tortious interference. See St. Onge Livestock Co. v. Curtis, 650 N.W.2d 537, 542 (S.D. 2002). Although Continental argues that McCarrell unilaterally decided to remove Janvrin from CTAP's lineup, McCarrell testified that he would not have removed Janvrin if he had not received Anderson's call. Both McCarrell and Spidahl also testified that, according to their knowledge, CTAP had never received a complaint about the quality of Janvrin's trucking service. The jury could thus reasonably conclude that Janvrin would have realized continuing income by remaining in CTAP's lineup but for Continental's conduct.

Continental further argues that Janvrin's damages claims were not supported by the evidence because his claims for lost income included depreciation and expense deductions. South Dakota follows the "reasonable certainty test" for proving damages, which requires "proof of a rational basis for measuring loss, without

-9-

allowing a jury to speculate." Lord v. Hy-Vee Food Stores, 720 N.W.2d 443, 454 (S.D. 2006); see also Cedar v. Johnson, 921 N.W.2d 178, 183-84 (S.D. 2018) (stating that although uncertainty as to the fact of damages is fatal to recovery, uncertainty as to the amount, if merited, is not). Janvrin used his 2012 and 2013 tax return information to explain the value of depreciation for his trucks and the expenses he incurred after J&J lost CTAP's business. The jury was permitted to weigh the credibility of the evidence and award the compensatory damages as it did. See Brenden v. Anderson, 327 N.W.2d 136, 139 (S.D. 1982) (holding that juries may use tax returns in part to "mold their damages remedy").

Substantial evidence also supports the jury's award of punitive damages. "Malice is an essential element of a claim for punitive damages" in South Dakota. Dahl v. Sittner, 474 N.W.2d 897, 900 (S.D. 1991). Malice may be shown by, *inter alia*, a "desire and intention to injure another" (actual malice) or by the conduct of a person who "acts willfully or wantonly to the injury of the other" (presumed, legal malice). Id. As recounted above, Carlson took offense at Janvrin's newspaper comment. As a result, Continental caused CTAP to remove Janvrin from its Bowman terminal lineup. Thereafter, Carlson boasted about putting Janvrin out of business. Although Continental disputes this characterization of the evidence, a jury could reasonably infer that Continental acted willfully when it caused injury to Janvrin's business and Janvrin's relationship with CTAP.

Continental alternatively argues that the district court erred in denying its motion for a new trial, alleging the same grounds asserted in its appeal from the denial of its motion for judgment as a matter of law. For the reasons discussed above, we conclude that the district court did not abuse its discretion in denying Continental's motion for a new trial. See Peerless Corp. v. United States, 185 F.3d 922, 927 (8th Cir. 1999) ("A district court's denial of a motion for new trial is virtually unassailable when the verdict is claimed to be against the weight of the evidence. . . . [W]e reverse for a clear abuse of discretion only where there is an

-10-

absolute absence of evidence to support the jury's verdict." (internal quotation marks and citations omitted)).

## B.

Continental contends that the district court erred when instructing the jury on improper interference. We review a district court's jury instruction for abuse of discretion, but we review *de novo* whether the district court correctly interpreted the state law within the instruction. Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc., 125 F.3d 1176, 1180 (8th Cir. 1997). "It is well established that a party is entitled to have the jury instructed on its theories if the proposed instructions are correct statements of the law and supported by the evidence." Id. The district court, however, "has broad discretion in choosing the form and the language of the instructions." Id. There is no reversible error if the instructions, taken as a whole, "fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Linden v. CNH Am., LLC, 673 F.3d 829, 836 (8th Cir. 2012) (quoting McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 744 (8th Cir. 2010)).

Continental contends that the district court's jury instruction confused and misled the jury because it placed a condition on Continental's ability to exercise its rights. The contested instruction stated in pertinent part:

1.  Continental Resources has the right to refuse to do business with Jerry Janvrin and to exclude Janvrin from its property.
2.  But Continental Resources cannot improperly interfere with Jerry Janvrin's business interest with CTAP.

Continental stresses that it must be permitted to exercise its rights even if doing so happens to affect a third-party relationship. It contends that the district court should

-11-

have instructed the jury that it had the "absolute right" both to exclude Janvrin from its property and to refuse to deal with Janvrin, that "[t]he mere exercise of this right cannot constitute tortious interference," and that "there is no liability for procuring a breach of contract where such breach is caused by the exercise of an absolute right."

We conclude that the district court's instruction was proper, turning as it does on the difference between the Janvrin-Continental relationship and the Janvrin-CTAP relationship. The instruction recognizes Continental's right to refuse to do business with Janvrin and at the same time precludes Continental from interfering with the third-party Janvrin-CTAP relationship, as to do so would exceed the mere exercise of its rights. See, e.g., Table Steaks v. First Premier Bank, N.A., 650 N.W.2d 829, 837 (S.D. 2002) (holding that a defendant may be found liable after asserting a right if the act prevented the plaintiff from entering into new agreements with third parties). This is an accurate statement of South Dakota law and the Restatement on which it is based, which states that "[t]here is no general duty to do business with all who offer their services, wares or patronage; but there is a general duty not to interfere intentionally with another's reasonable business expectancies of trade with third persons . . . unless the interference is not improper under the circumstances." Restatement (Second) of Torts § 766 cmt. b; see also Tibke v. McDougall, 479 N.W.2d 898, 908 (S.D. 1992). Thus, in viewing the instruction as a whole and in applying the law to the issues presented to the jury, we conclude that the district court did not err in instructing the jury as it did.

The judgment is affirmed. Janvrin's motion to strike a portion of Continental's reply brief is denied as moot.

_____