# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-2539

_____

Richard Paul Jeffery, III

*Plaintiff - Appellant*

v.

Tim Townsend; Patti Jeffery

*Defendants - Appellees*

_____

No. 24-2621

_____

Richard Paul Jeffery, III

*Plaintiff - Appellee*

v.

Tim Townsend; Patti Jeffery

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: September 17, 2025
Filed: January 22, 2026

_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

Richard Jeffery III (Rich)[1] sued Tim Townsend, his stepbrother, and Patti Jeffery, his stepmother, over the management of IRA funds owned by his father, Richard Jeffery Jr. (Richard). After Richard passed away, Rich claimed Tim moved the funds to a different brokerage firm without notifying him and the funds lost value in the meantime. The jury found for Rich on some, but not all, of his claims and awarded damages.

Rich appeals, asserting the district court[2] erred in refusing to give his proposed jury instruction on undue influence and in granting Tim and Patti's motion to amend the judgment on damages. On cross-appeal, Tim challenges the denial of his renewed motion for judgment as a matter of law on the fraud claim. We address the appeals in turn.

## I.

In 2005, Richard and Patti married—the second marriage for each. The couple held a joint bank account, into which both contributed funds towards their living expenses. Richard separately maintained an account with E*Trade, an investment brokerage firm, to manage his IRA funds. He listed Rich and Patti as primary beneficiaries, with 75% and 25% interests respectively.

In July 2019, Richard was diagnosed with mild dementia, and by November 2020, he no longer felt comfortable managing his finances. Richard granted Tim

_____

[1]We use first names to avoid confusion.

[2]The Honorable C.J. Williams, Chief Judge, United States District Court for the Northern District of Iowa.

power of attorney for the E\*Trade account, but Tim had difficulty accessing the account. To remedy the problem, Tim filed a petition in state court on August 5, 2021, to become Richard's conservator. He was appointed[3] on September 21, 2021. Rich was not notified of the petition or the appointment.

By December 17, 2021, Tim had access to Richard's E\*Trade account. On December 21, 2021, he withdrew $25,000 from the E\*Trade account and deposited it into the conservatorship account he had set up. On December 20, 2021, Richard moved into Boyson Heights, an assisted living center, and Patti joined him a few days later. Richard's health soon declined, and he passed away on January 15, 2022.

On January 10, 2022, Tim, as Richard's conservator, applied for an account with AssetMark, a wealth management company. On January 12, 2022, three days before Richard's death, Tim contacted E\*Trade to withdraw the required minimum distribution for 2022, which was $83,713, and deposited it into the conservatorship account. On January 19, 2022, AssetMark approved Tim's application, and Tim requested a transfer of the remaining funds in the E\*Trade account to the AssetMark account, that same day.

In text messages from January 19 to 20, 2022, Tim told Rich that the funds from his father's account were not yet available, but he sent Rich a screenshot of the E\*Trade account balance. At Richard's Celebration of Life, on February 5, 2022, Tim gave Rich an E\*Trade Beneficiary Distribution Request Form, which explained how to take a distribution from the account of a deceased account holder. Tim did not tell Rich the funds had been, or would be, moved from E\*Trade to AssetMark.

On March 1, 2022, Tim contacted Michael Abbate, a financial planner, about allocation of the funds, now managed by AssetMark. Abbate then called Rich and left a voicemail, saying he worked with Tim to get his share of the funds from the E\*Trade account and offering to help Rich as well. Rich listened to the voicemail

---

[3]Tim was also appointed to be Richard's guardian.

but did not return the call. He did not know who Abbate was and believed he was simply trying to sell him financial services.

On April 14, 2022, Rich called E*Trade to check the balance of the account. E*Trade told him there was a withdrawal in January 2022 and a transfer in February 2022. Rich was unable to access his share of the funds, now with AssetMark, until Abbate emailed him on June 10, 2022.

Rich filed suit against Tim and Patti, alleging multiple claims related to their handling of his inherited share of his father's assets. After a three-day trial, the jury found in favor of Rich on fraud and conversion claims against Tim and on unjust enrichment claims against Tim and Patti. The jury found no liability on the tortious interference claim against Tim or the conversion claim against Patti. Both Rich and Tim filed post-trial motions, which the district court resolved. This appeal followed.

II.

On direct appeal, Rich challenges the district court's refusal to instruct the jury on undue influence.[4] We review for an abuse of discretion, recognizing a district court's "broad discretion in submitting instructions to the jury[.]" Acad. Bank, N.A. v. AmGuard Ins. Co., 116 F.4th 768, 786–87 (8th Cir. 2024) (quoting Fox v. Dannenberg, 906 F.2d 1253, 1258 (8th Cir. 1990)). "In diversity cases the substance of jury instructions is a matter governed by the applicable state law. Accordingly, the jury instructions, when read as a whole, must fairly and adequately present the relevant state law." Id. at 787 (quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 711 (8th Cir. 2001)).

---

[4]The district court did not instruct the jury on Rich's undue influence claim, finding the evidence did not support it. The court also declined to include an instruction on undue influence as part of the instruction on Rich's tortious interference claim. We read Rich's arguments on appeal to assign error to both rulings.

Under Iowa law, a plaintiff must establish the following elements to succeed on a claim of undue influence:

> (1) The [grantor] must be susceptible to undue influence, (2) opportunity [on the part of the grantee] to exercise such influence and effect the wrongful purpose must exist, (3) a disposition [on the part of the grantee] to influence unduly for the purpose of procuring an improper favor must be present, and (4) the result must clearly appear to be the effect of undue influence.

Geerdes by Jenkins v. Cruz, 7 N.W.3d 22, 28 (Iowa 2024) (quoting Mendenhall v. Judy, 671 N.W.2d 452, 454 (Iowa 2003)) (alterations in original). The district court declined to submit Rich's undue influence claim to the jury on the grounds that the evidence presented did "not fit an undue influence claim."

Rich disagrees. He asserts that the instruction was warranted because the evidence showed Tim unduly influenced Richard to make various financial transactions, including the withdrawals from the E*Trade account in December 2021 and January 2022. However, it was not Richard who engaged in the contested transactions. Rather, it was Tim, acting in his capacity as conservator, who did so on Richard's behalf.

Rich does not dispute these facts but characterizes the relationship between Tim and Richard as a "confidential relationship," such that any transfer to Tim is "presumptively the product of undue influence." See Mendenhall, 671 N.W.2d at 454–55 (outlining "several principles in determining the existence of a confidential relationship" for purposes of an undue influence claim). But this case did not require the district court to determine whether a confidential relationship existed for purposes of Rich's undue influence claim. Here, the relationship between Tim and Richard was established by state court proceedings where Tim was appointed as Richard's conservator. Under Iowa law, that appointment required a finding that "[t]he decision-making capacity of [Richard] is so impaired that [Richard] is unable to make, communicate, or carry out important decisions concerning [his] financial

affairs." Iowa Code § 633.553(1)(a). Rich does not challenge the state court conservatorship proceedings or Tim's appointment as conservator. Nor does he assert a breach of fiduciary duty or any willful or wanton misconduct. And there is no allegation that Richard was unduly influenced by a third party to engage in any financial transactions. See, e.g., Smith v. Harrison, 325 N.W.2d 92, 94 (Iowa 1982) (holding conservator did not demonstrate that his conservatee was unduly influenced by a third party); cf. Helgeson v. Henderson (In re Est. of Herm), 284 N.W.2d 191, 200 (Iowa 1979) (finding sufficient proof to support an undue influence claim brought by a conservator against a third party). On these allegations and the record before us, we see no abuse of discretion in the district court's decision not to submit the undue influence claim to the jury.[5]

### III.

Next, Rich argues the district court erred in finding that the damages on the unjust enrichment and conversion claims were duplicative. Under Iowa law, "duplicate recovery or overlapping damages are to be avoided." Lara v. Thomas, 512 N.W.2d 777, 783 (Iowa 1994) (first citing Nassen v. Nat'l States Ins. Co., 494 N.W.2d 231, 236–37 (Iowa 1992); and then citing Preferred Mktg. v. Hawkeye Nat'l Life Ins. Co., 452 N.W.2d 389, 396 (Iowa 1990)). We review the denial of a motion to amend judgment for abuse of discretion. Wagstaff & Cartmell, LLP v. Lewis, 40 F.4th 830, 842 (8th Cir. 2022) (citing Cont'l Indem. Co. v. IPFS of N.Y., LLC, 7 F.4th 713, 717 (8th Cir. 2021)).

On Rich's unjust enrichment claim, the jury found Tim liable for $420 and Patti for $50,000. On the conversion claim against Tim, the jury awarded Rich $62,784.75 in compensatory damages and $25,000 in punitive damages. After trial, Tim and Patti filed a motion to amend the judgment, contending that the jury awarded duplicative damages on these claims. They argued that the $50,000 award

---

[5]For the same reasons, the district court also did not abuse its discretion when it refused to instruct the jury on undue influence in connection with the tortious interference claim.

for unjust enrichment against Patti was duplicative of the $62,784.75 compensatory award for conversion against Tim. Both awards, they said, were based on the $83,713 withdrawal from Richard's IRA account in January 2022. The district court agreed.

Rich was a 75% beneficiary of Richard's IRA account. The jury found Tim responsible for $62,784.75 on the conversion claim—exactly 75% of the January 2022 withdrawal of $83,713 that Tim had deposited into the conservatorship account. On this, the parties agree. The source of the $50,000 unjust enrichment award against Patti is the focus of the dispute.

Finding the damages on these claims were duplicative, the district court reasoned as follows: After Richard died, Tim distributed the funds remaining in the conservatorship account, $74,109.50, to Patti. At trial, for purposes of calculating damages, Tim and Patti argued to the jury that Patti was entitled to one-third of this asset as Richard's surviving spouse. This left two-thirds for Rich—approximately $49,000 to $50,000. Tim and Patti proposed in closing argument that $50,000 was the appropriate amount, and this was the amount the jury awarded to Rich on the unjust enrichment claim against Patti. Because the jury's awards of damages against Tim and against Patti were based on the January 2022 withdrawal of $83,713, the district court found that the two damages awards "came from the same pot of money and same transactions."

Rich proposed alternative theories for how the jury may have reached $50,000 in a manner that did not result in duplicative damages, but the district court found those calculations speculative, imprecise, and ultimately unconvincing. In addition, the court had expressly instructed the jury that, if they found "in favor of any party on any claim," they "should not consider matters related to 'double recovery[,]'" explaining that "[t]he law instructs the judge and the parties on how to apportion such a verdict to avoid double recovery."

"The purpose of compensatory damages is to return an injured party to the party's original position." Lara, 512 N.W. 2d at 783 (citing Team Cent., Inc. v. Teamco, Inc., 271 N.W.2d 914, 925 (Iowa 1978)); see also EFCO Corp. v. Symons Corp., 219 F.3d 734, 742 (8th Cir. 2000) ("Although a party is entitled to proceed on various theories of recovery, a party is not entitled to collect multiple awards for the same injury.") (citation omitted). The district court did not abuse its discretion when granting the motion to amend the judgment to reflect that Tim and Patti are jointly liable for $50,000 (the amount awarded against Patti on the unjust enrichment claim) and Tim is individually liable for an additional $12,784.75 (the additional amount of compensatory damages on the conversion claim) to avoid double recovery.

## IV.

On cross-appeal, Tim argues the district court erred in denying his motion for judgment as a matter of law on Rich's fraud claim, a ruling we review de novo. See Janvrin v. Cont'l Res., Inc., 934 F.3d 845, 850 (8th Cir. 2019) (citing HOK Sport, Inc. v. FC Des Moines, L.C., 495 F.3d 927, 934 (8th Cir. 2007)). "We will set aside a jury verdict only if the evidence adduced at trial is entirely insufficient to support the verdict. We consider all evidence in the record without weighing credibility, and resolve conflicts and make all reasonable inferences in favor of the non-moving party." Id. at 850 (quoting Schooley v. Orkin Extermination, Co., 502 F.3d 759, 764 (8th Cir. 2007) (citation modified)).

To succeed on his fraud claim, Rich had to prove that Tim made a material, false representation; that he did so knowingly and with the intent to deceive Rich; that Rich justifiably relied on Tim's representation; and that Rich suffered damages as a result. See Schooley, 502 F.3d at 764 (identifying elements of fraud claim). Tim challenges the sufficiency of the evidence on two of these elements.

First, Tim contends there was insufficient evidence to support finding Rich justifiably relied on Tim's representations as to where the IRA funds were held. A

"plaintiff cannot recover if he blindly relies on a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Id. at 765 (citation modified). "The standard is whether the complaining party, in view of his own information and intelligence, had a right to rely on the representations." Id. (citation modified).

The record shows that Tim sent a screenshot of the E*Trade account balance to Rich on January 20, 2022. In early February 2022, he gave Rich an E*Trade form that provided instructions on how to withdraw a distribution from a decedent's IRA. Both communications occurred after Tim began the process of moving the funds from E*Trade to AssetMark.

Tim counters that once Abbate left Rich a voicemail in early March 2022, it was no longer reasonable to rely on any representation from Tim about the location of the funds. But Abbate did not provide any details in the message about the fund transfer, and Rich testified that he believed Abbate was simply selling financial management services. Rich also testified that Tim never told him the funds had been transferred to AssetMark. The jury was permitted to credit Rich's testimony.

In addition, after several unsuccessful attempts to speak with someone at E*Trade, Rich eventually learned—in April 2022—that the funds were no longer with E*Trade. He then sought legal counsel. Even if Rich could have undertaken a more vigorous investigation at this point to locate the funds, a reasonable jury could conclude that he was justified in relying on previous communications with Tim—his stepbrother—and that his reliance was reasonable under the circumstances. See Spreitzer v. Hawkeye State Bank, 779 N.W.2d 726, 737 (Iowa 2009) (clarifying that in a fraud claim, "the justified standard followed in Iowa means the reliance does not necessarily need to conform to the standard of a reasonably prudent person, but depends on the qualities and characteristics of the particular plaintiff and the specific surrounding circumstances").

Second, Tim argues the record does not support the jury's resulting damages award. The jury awarded $39,558.37 on the fraud claim, which the parties agree was based on the decline in the AssetMark account's value from May through June 2022. According to Tim, the damages award should include only the loss in value prior to June 10, 2022, the date Rich took control of his share of the funds. After that date, he argues, any loss in value was attributable to Rich's own actions or inactions, and the award should be reduced for the days spanning June 10 to 30, 2022.

At trial, the loss in value of the account was measured by months, not days. While "judgment as a matter of law is appropriate when the record contains no proof beyond speculation to support a verdict," Arabian Agric. Servs. Co. v. Chief Indus., Inc., 309 F.3d 479, 482 (8th Cir. 2002) (citation modified), the jury did not need to speculate here. The undisputed—and only—evidence presented at trial on this issue demonstrated the change in value of the account on a monthly basis. Pavone v. Kirke, 801 N.W.2d 477, 495 (Iowa 2011) (recognizing that "some speculation on the amount of damages sustained is acceptable" and "recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated") (quoting Orkin Extermination Co. v. Burnett, 160 N.W.2d 427, 430 (Iowa 1968)). From this evidence and the reasonable inferences drawn from it, the jury had sufficient information to reach a non-speculative verdict.

V.

The judgment of the district court is affirmed.

_____

-10-